IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWARD BROWN, a/k/a EDWARD GEE,  )
                                 )
           Plaintiff             )
                                 )
        vs.                      )
                                 )
J. G. MRAVINTZ, Correctional     )
Officer, W. L. SHERWOOD,         )    Civil Action No. 04-30J
Correctional Officer, M. BROTHER,)
Correctional Sergeant, B. STAYER,)
Correctional Sergeant, T. W.     )    Judge Kim R. Gibson/
PRITTS, Correctional Officer, JOHN )  Magistrate Judge
DOE I, Correctional Officer, JOHN )   Amy Reynolds Hay
DOE II, Correctional Officer,    )
J. BERTOLINO, Correctional       )
Lieutenant, T. PAPUGA, Correctional)
Intelligence Captain, R. J. SOBINA,)
BEN E. ANSELL, Hearing Examiner, )
and KERRI CROSS, Hearing Examiner, )
                                 )
           Defendants            )
                                 )    Doc. No. 94-1

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the Defendants' motion for summary judgment be granted in part and denied in part. It should be granted as to Plaintiff's claims as to all of the Defendants except as to Defendant Mravintz and Defendant Pritts. As to Defendants Mravintz, the motion should be denied with respect to Plaintiff's excessive force claim. As to Defendant Pritts, the motion should be denied as to Plaintiff's excessive force claim and his retaliation claim.

REPORT

This case was the subject of a prior report and recommendation, familiarity therewith is presumed.

## A.   Relevant Procedural History

Edward Brown, (Plaintiff), while a prisoner at SCI-Somerset, filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  The operative complaint is Doc. 70. Plaintiff essentially complains about two incidents of alleged excessive force and one instance of retaliation.  Defendants filed a summary judgment motion, Doc. 94, and a brief in support.  Accompanying the motion were evidentiary materials, including a video tape recording of the use of force incident that occurred on October 22, 2003. Plaintiff filed a response, Doc. 100, a Declaration in opposition, Doc. 101, a Statement of Disputed Factual issues, Doc. 102, and a Brief in Opposition, Doc. 103.

## B. Standard of Review - Summary Judgment

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In reviewing the

summary judgment evidence, the Court has no duty to search the record for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention.  See Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587.  The inquiry involves determining whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990).  If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50.  Moreover, it is not enough for the nonmovant to show that there is some dispute as to facts, rather, "only disputes over facts that might affect the outcome of the suit will prevent summary judgment." Anderson, 477 U.S. at 248.

In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a

trial.  Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001).

### C. Discussion

#### 1.  Eighth Amendment Excessive force

Plaintiff makes at least two claims of excessive force.  The landmark Supreme Court case in the Eighth Amendment excessive force area is Hudson v. McMillian, 503 U.S. 1 (1992).  The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7.  In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim.  See id. at 22-23 (Thomas, J., dissenting)

> In the context of claims alleging the excessive use of
> physical force, the Court then asserts, the serious
> deprivation requirement is satisfied by no serious
> deprivation at all.  'When prison officials maliciously
> and sadistically use force to cause harm, contemporary
> standards of decency always are violated.'  Ibid.
> Ascertaining prison officials' state of mind, in other
> words, is the only relevant inquiry in deciding whether
> such cases involve cruel and unusual punishment. . . .
> The sum and substance of an Eighth Amendment violation,
> the Court asserts, is  'the unnecessary and wanton
> infliction of pain.'  This formulation has the
> advantage, from the Court's perspective, of eliminating
> the objective component.

(some citations omitted and quotation marks modified).  <u>Accord</u>
<u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000)("In Hudson, the
Court distinguished between prisoner conditions- of-confinement
and medical-deprivation claims, on the one hand, and wanton use
of unnecessary force claims on the other.  Although the former
kind of claim cannot survive without evidence that a deprivation
was 'harmful enough' . . . , the latter kind of claim has no such
requirement").  Accordingly, to establish an Eighth Amendment
excessive force claim, the plaintiff must only adduce evidence
that the force used was applied not in a good-faith effort to
maintain or restore discipline, but maliciously and sadistically
to cause harm.[1]

---

[1]  This is not to say that a findfinder at trial must disregard
the extent of the injuries suffered by a plaintiff.  As the Supreme
Court observed in <u>Hudson</u>:

> Under the Whitley approach, the extent of injury suffered by
> an inmate is one factor that **may** suggest 'whether the use of
> force could plausibly have been thought necessary' in a
> particular situation, 'or instead evinced such wantonness
> with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur.'  475
> U.S. at 321.   In determining whether the use of force was
> wanton and unnecessary, it may also be proper to evaluate
> the need for application of force, the relationship between
> that need and the amount of force used, the threat
> "reasonably perceived by the responsible officials," and
> "any efforts made to temper the severity of a forceful
> response."  Ibid.  The absence of serious injury is
> therefore relevant to the Eighth Amendment inquiry, but does
> not end it."

<u>Hudson</u>, 503 U.S. at 7 (emphasis added).  However, saying, in dicta,
that the absence of serious injury is relevant to an Eighth Amendment
excessive force inquiry is not to say that some quantum of injury is a
necessary component of an excessive force claim.  <u>See</u>, <u>e.g.</u>, <u>Brooks v.</u>
<u>Kyler</u>, 204 F.3d at 104 ("Following Hudson's focus on the force used,
as opposed to the injury inflicted, we conclude that although the

Although it is true that de minimis use of **force**, which is
itself not repugnant to human decency, does not state an Eighth
Amendment claim of excessive force, it does not necessarily
follow that infliction of de minimis **injury** fails to state an
Eighth Amendment excessive force claim.  See, e.g., Hudson, 503
U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and
unusual' punishments necessarily excludes from constitutional
recognition *de minimis* uses of physical force, **provided** that the
use of force is not of a sort 'repugnant to the conscience of
mankind.'")(emnphasis added); Id. at 9 ("When prison officials
maliciously and sadistically use force to cause harm,
contemporary standards of decency always are violated. See
*Whitley, supra,* 475 U.S. at 327.  This is true whether or not
significant injury is evident."); Smith v. Mensinger, 293 F.3d
641, 649 (3d Cir. 2002) ("*de minimis* injuries do not necessarily
establish *de minimis* force.").[2]

---

degree of injury is relevant for any Eighth Amendment analysis, there
is no fixed minimum quantum of injury that a prisoner must prove that
he suffered through objective or independent evidence in order to
state a claim for wanton and excessive force.").

   [2] It appears, contrary to Hudson and Kyler, that Defendants
contend that an excessive force claim requires an objective showing.
See Doc. 95 at 4 ("Concerning these claims, an objective standard must
be met").  The court rejects this  legal statement on the basis of the
holdings of Hudson and Brooks v. Kyler as set forth in the body of
this report.  For several reasons, this court is unpersuaded by the
Defendants' citation to Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.
2000) for the proposition that

      When excessive force is alleged in the context of a prison
      disturbance, the subjective inquiry is "whether force was
      applied in a good-faith effort to maintain or restore
      discipline, or maliciously and sadistically to cause harm."

## 2. October 2, 2003 Incident

The summary judgment record, viewed in a light most favorable to Plaintiff as the non moving party, would permit a jury to find the following.

On October 2, 2003, Plaintiff was being escorted from his cell to the property room by Defendants Mravintz and Sherwood. Because Plaintiff had an ankle injury, of which he allegedly informed Defendant Mravintz, he could not walk fast. Despite this, Defendant Mravintz allegedly kept pushing Plaintiff to walk faster. Plaintiff stated to Defendant Mravintz that he was not going to the property room if Mravintz continued to push him. Doc. 70 at 4 ¶ 15. After Defendant Mravintz told Plaintiff "If you walk, I won't push you, now walk," Plaintiff told Mravintz

---

[Hudson] at 7. The objective inquiry is whether the inmate's injury was more than de minimis. Id. at 9-10.

First, the plaintiff in Fuentes was held to be a pre-trial detainee, and hence, the Eighth Amendment standards, as such, did not apply, rather the greater protections afforded under the Fourteenth Amendment's substantive due process standards applied. See, e.g., Fuentes, 206 F.3d at 341 ("When Fuentes was placed in the restraint chair he was a convicted inmate awaiting sentencing. His status under the Constitution was therefore that of a pretrial detainee."). See, e.g., Hubbard v. Taylor, 399 F.3d 150, 167 n. 23 (3d Cir. 2005)("we recognized that pretrial detainees are entitled to greater constitutional protection than that provided by the Eighth Amendment."). Accordingly, any statement by the Court of Appeals concerning the Eighth Amendment would be dicta, as the dispositive inquiry in Fuentes had to concern itself with the Fourteenth Amendment's standards, and since such statements concerning the Eighth Amendment constitute dicta, they are not binding. Moreover, it is not clear that the above quoted passage from the Fuentes court held as a matter of law that there is necessarily an objective component required of an excessive force claim under the Eighth Amendment and hence, Defendants' citation thereto for that proposition is not persuasive in the face of the clear holdings of Hudson, and Brooks v. Kyler, which, as explained, did away with an objective component.

that "I'm not walking because you [sic] messing my ankle up more by pushing me at a fast pace. Id., at ¶ 17. Defendant Mravintz then allegedly pushed Plaintiff up against the wall and stated that "you're going to walk." Id., at ¶ 18. Inmates in the block then began banging on their doors in response to this scene. Id., at ¶ 19. Defendant Mravintz then put Plaintiff in a head lock and rushed Plaintiff out into the hallway away from the other prisoners and allegedly threw Plaintiff up against the wall a second time.

Defendant Stayer came out of his office to inquire as to what the problem was. Plaintiff explained the situation. Plaintiff was then was escorted to the property room by Defendants Mravintz, Sherwood and Strayer. Upon arriving, Defendant Strayer noticed Plaintiff's hand was bleeding and asked Plaintiff about it, and Plaintiff told Defendant Strayer it must have happened when Defendant Mravintz threw Plaintiff up against the wall.

Plaintiff alleges that the foregoing violated his Eighth Amendment rights. He alleges that Defendant Mravintz utilized excessive force. He alleges that Defendant Sherwood, by not doing anything to intervene in Defendant Mravintz's alleged assaults acquiesced in the Eighth Amendment violation. Doc. 70 at 4, ¶ 31. Plaintiff alleged that Defendant Stayer violated his Eighth Amendment rights by doing nothing after Plaintiff alerted him that Defendant Mravintz assaulted Plaintiff. Id., at ¶ 32.

Given the evidence (mostly, Plaintiff's verified complaint),[3] supporting Plaintiff's version of the events, some of Plaintiff's claims against Defendant Mravintz survive because that evidence creates a genuine issue of material fact.

To the extent that Plaintiff is alleging Defendant Mravintz ordered Plaintiff to move faster and pushed him when he failed to do so, notwithstanding Plaintiff's informing Mravintz of his injured ankle, such use of de minimis force is simply insufficient, as a matter of law, to state an Eighth Amendment violation. See, e.g., Smith v. Mensinger, 293 F.3d at 648 ("it is true that the Eighth Amendment does not protect an inmate against an objectively de minimis use of force."); Thomas v. Ferguson, 361 F.Supp.2d 435, 442 (D.N.J. 2004)("Eighth Amendment protections, however, have never been afforded in cases of minor injury and minor use of force, even in the face of allegedly immoral conduct."); Brown v. Vaughn, 1992 WL 82310, *2 (E.D.Pa. April 13, 1992) (granting summary judgment in favor of defendants where corrections officer initiated violence by punching plaintiff-inmate once, and pushing, spitting, verbally abusing, and using racial slurs against him); Candelaria v. Coughlin, 787 F.Supp. 368, 374 (S.D.N.Y. 1992), aff'd, 979 F.2d 845 (2d Cir. 1992) (granting motion to dismiss plaintiff-inmate's complaint where corrections officer initiated violence by using a pocket

---

[3] Paters v. United States, 159 F.3d 1043, 1052 (7th 1998)("a verified complaint . . . would have the same force and effect as an affidavit...")(quoting Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992)(emphasis added by the Paters court).

knife to cut a string with religious significance from around plaintiff's neck and unprovokedly pushed his fist against plaintiff's neck inhibiting plaintiff's ability to move and breathe); <u>Lenegan v. Althouse</u>, 1988 WL 55243, *2 (E.D.Pa. May 26, 1988) (granting motion to dismiss plaintiff-inmate's complaint where corrections officer initiated conflict by smacking seated plaintiff in the back of his head as another corrections officer pulled inmate's hair).

However, Plaintiff's claim that Defendant Mravintz slammed Plaintiff into the wall after Plaintiff refused to walk further and thereafter, rushed him out of the area in a headlock and then slammed him against the wall a second time is sufficient to survive summary judgement because such a scenario, if believed by the jury could permit them to find the use of excessive force in violation of the Eighth Amendment.[4]

The court will next address Plaintiff's claims against Defendants Sherwood and Stayer.  Plaintiff's claims against these two defendants are essentially that they did nothing to prevent Plaintiff being attacked by Defendant Mravintz.

---

[4]  Of course, the Defendants offer a differing version of the events in their summary judgment motion and evidentiary materials in support thereof.  However, at most, their version of the events creates a material factual dispute with Plaintiff's version, which means this is a question to be resolved by the jury.  It may even be conceded that Plaintiff's refusal to walk created a "disturbance" as Defendants would have it, however, jurors could find that slamming Plaintiff into the wall twice for refusing to obey an order to walk was out of proportion to the need for any force and permits an inference of the wanton use of force proscribed by the Eighth Amendment.  Therefore, Defendants' motion for summary judgment as to this precise claim against Defendant Mravintz should be denied.

Plaintiff's argument is that these Defendants failed to intervene to prevent Defendant Mravintz from assaulting Plaintiff.[5]  See, e.g., Doc. 70 at 4, ¶ 31 ("All the while, defendant Sherwood stood idly by and took no steps to intervene to prevent the excessive and unnecessary force used against the Plaintiff.  His refusal to check defendant Mravintz, signals his acquiesce [sic] to defendant Mravintz's maliciously and sadistically use [sic] of force on the Plaintiff.").  Although it is true that neither Defendants Sherwood or Stayer struck Plaintiff, they may nevertheless be held liable for an Eighth Amendment violation if their inaction was a substantial causal factor in the violation.  See, e.g., Mensinger,  293 F.3d at 650

---

[5]  While it is true that the Defendants did not seek summary judgment with respect to the failure to intervene claim(s), a District Court has the inherent authority to grant summary judgment sua sponte so long as the party opposing summary judgment has notice and an opportunity to be heard concerning the proposed basis for the sua sponte grant of summary judgment.  Canell v. Bradshaw, 97 F.3d 1458, at **5 (Table, Text available in Westlaw), (9th Cir. 1996) (unpublished)("A district court may grant summary judgment to a non-moving party sua sponte so long as the other party has had an adequate opportunity to address the relevant issues.").  See also Celotex, 477 U.S. at 326 ("Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").  Here, the report and recommendation and objections procedure can serve as the necessary notice and opportunity to respond.  Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998) ("Here, the Magistrate Judge's Memorandum and Recommendation placed Magouirk on notice that procedural default was a potentially dispositive issue with respect to three of his claims. Magouirk responded to the Magistrate Judge's sua sponte invocation of procedural default within the ten-day time period allowed for filing objections to the report.  Thus, Magouirk was afforded both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court."); Canady v. Baker, 142 F.3d 432 (Table), 1998 WL 123996, *1 (6th Cir. 1998)(same).

("We hold that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.").   In order to state a claim under the Eighth Amendment against Defendants Sherwood and Stayer, for their alleged failure to intervene,

> a plaintiff must establish that: (1) the [corrections] officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene." *See Smith v. Mensinger*, 29 F.3d 641, 650-51 (3d Cir.2002)

Fernandez v. Stack, 2006 WL 777033, *12 n.8 (D.N.J. March 27, 2006).  Moreover it is the Plaintiff's burden to adduce evidence of both  requirements.  See, e.g., id. ("a plaintiff must establish. . . ."); Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1289 (N.D. Ga. 1998)("plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.").

In conducting this inquiry as to whether either Defendant Sherwood or Stayer had a realistic and reasonable opportunity to intervene, courts consider many factors, including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc. See, e.g., Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996) (where officer "had no reason to expect the use of

excessive force until after it had occurred, he had no reasonable opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose."); Lambert v. City of Santa Rosa, 2005 WL 3096575, *5 (N.D. Cal. 2005)("Because Johnson was in the other room when the initial injury occurred and the complaint does not indicate that she had any warning that Sanchez would use force on Mr. Lambert, she had no realistic opportunity to intervene before Mr. Lambert's leg was broken."); Swinyer v. Cole, 2006 WL 1874100, *3 (W.D. Wash. July  6, 2006)("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."); Mitchell v. James, 2006 WL 212214, *5  (E.D. Mo. Jan. 27, 2006)("it was proper to consider the proximity of the officers to the officer who allegedly used excessive force, the nature of the officer's actions, whether there was a substantial risk of serious harm to the inmate, the inmate's actual injuries . . .").

Plaintiff has adduced no evidence at all as to whether Officer Sherwood and Sergeant Stayer had a reasonable and realistic opportunity to intervene.  The pertinent inquiry is carefully circumscribed under the instant facts, because, as a matter of law, Defendant Mravintz's shoving Plaintiff to walk faster is not an Eighth Amendment violation, Defendants Sherwood and Stayer's failure to intervene at that point cannot serve as a

13

basis of liability under the Eighth Amendment because where there is no violation, there is no duty to intervene. <u>Long v. Pend Oreille County</u>, 2006 WL 2850011, *10 (E.D. Wash. 2006)("Because the force used in this case was not constitutionally excessive, the other officers [sought to be held liable for failing to intervene] cannot be held liable for failure to intervene or protect.").[6]  Hence, the only potential excessive force violations for which Sherwood could be liable for failing to intervene in are Defendant Mravintz's allegedly twice banging Plaintiff's head against the wall and grabbing him in headlock and  carrying him out of the block.  It is undisputed that these events took place very quickly.  See Doc. 70 at 4, ¶¶ 18-20 (Plaintiff made a statement saying he was not going to walk, apparently without warning (at least there is no evidence that Defendant Mravintz gave a warning) Defendant Mravintz threw Plaintiff against the wall, immediately, the other inmates on the block started a commotion as a consequence, and Defendant Mravintz put Plaintiff in a headlock and dragged him away and

---

[6]  Even if we assumed for the sake of argument that Mravintz's alleged pushing an inmate to walk faster on an injured ankle constituted an Eighth Amendment violation, Defendant Sherwood could not be held liable for a failure to intervene, where there is no evidence of record that he knew Plaintiff had an injured ankle.  <u>See</u>, <u>e.g.</u>, <u>Smith v. Boyle</u> 2004 WL 2203438, *2 (N.D. Ill. Sept. 29, 2004) ("In order for an officer to be held liable for failure to intervene. . . , Plaintiff must show that 'the officer had reason to know: (1) that excessive force was being used'")((quoting <u>Byrd v. Brishke</u>, 466 F.2d 6, 13 (7th Cir. 1972)).  Indeed, the only evidence of record is that Sherwood did not know Plaintiff had an injured ankle.  Doc. 103-3 at 39, ¶ 15 (Sherwood's sworn statement that he did not know) & ¶ 18 (sworn statement that he did not hear Plaintiff tell Mravintz about his ankle).

then outside the inmate block, and threw Plaintiff against the wall a second time).  Plaintiff has pointed to no evidence as to where Defendant Sherwood was,[7] how close in physical proximity he was to the alleged banging of Plaintiff against the wall by Defendant Mravintz, what Sherwood did in reaction to the commotion of the prisoners, and whether he had a realistic opportunity to intervene given the short duration of the events. See, e.g., Riley v. Newton, 94 F.3d at 635 (where officer "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect [plaintiff], and the obligation to take steps to protect him never arose."); Long v. Pend Oreille County, 2006 WL 2850011, *10 (E.D. Wash. Oct. 2, 2006)("officers who are present, but who have no opportunity to prevent a sudden and brief assault, may not be held liable for an attack"); Swinyer v. Cole, 2006 WL 1874100, *3 (W.D. Wash. July 6, 2006)("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."); Hogan v. City of Easton, 2006 WL 2645158, *15 (E.D.Pa. Sept. 12, 2006)("There is no dispute that the use of force in this case happened in a

---

[7] Indeed, the only evidence of record which the court discovered is that Defendant Sherwood was about 8 feet behind Defendant Mravintz at the time immediately before the first head banging allegedly took place.  Doc. 103-3 at 40, ¶ 20.  There is no evidence as to where Sherwood was during the second wall banging.

matter of seconds, and we conclude that no reasonable juror could find that the non-shooting officers had an opportunity to intervene."). Hence, Defendant Sherwood is entitled to summary judgment.

The foregoing reasoning applies with even greater force to Defendant Stayer. It is undisputed that Defendant Stayer was in his office at the time of the two alleged assaults. There is no evidence of record that Defendant Stayer was within sufficient physical proximity to do anything to intervene and indeed, it is not disputed that Defendant Stayer had to "come out of his office" in order to address the Plaintiff and Defendant Mravintz to inquire as to what the problem was. Doc. 70 at 4, ¶ 21. Hence, because there is no evidence that Defendant Stayer was physically present during the two alleged assaults of Defendant Mravintz throwing Plaintiff into the wall, such that Defendant Stayer could do anything to intervene, summary judgment should be granted to Defendant Stayer.

Liberally construing the Plaintiff's complaint, it may be that Plaintiff, rather than making a claim that Defendant Stayer failed to intervene, is actually making a claim against Defendant Stayer as a supervisor of guards who failed to protect Plaintiff from Defendant Mravintz.

The Court of Appeals for the Third Circuit set forth the elements of a cause of action based upon supervisory liability. The Court observed that:

> [i]n <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir.
> 1989), this court identified the elements of a
> supervisory liability claim.  The plaintiff must (1)
> identify the specific supervisory practice or procedure
> that the supervisor failed to employ, and show that (2)
> the existing custom and practice without the
> identified, absent custom or procedure created an
> unreasonable risk of the ultimate injury, (3) the
> supervisor was aware that this unreasonable risk
> existed, (4) the supervisor was indifferent to the
> risk; and (5) the underling's violation resulted from
> the supervisor's failure to employ that supervisory
> practice or procedure. We emphasized that "it is not
> enough for a plaintiff to argue that the
> constitutionally cognizable injury would not have
> occurred if the superior had done more than he or she
> did." <u>Sample</u>, 885 F.2d at 1118. Rather, the plaintiff
> must identify specific acts or omissions of the
> supervisor that evidence deliberate indifference and
> persuade the court that there is a "relationship
> between the 'identified deficiency' and the 'ultimate
> injury.' " Id.

<u>Brown v. Muhlenburg</u>, 269 F.3d 205, 216 (3d Cir. 2001).

Instantly, Plaintiff has failed to adduce any evidence that Defendant Stayer employed or failed to employ a supervisory practice that was deliberately indifferent to the risk that Defendant Mravintz would assault Plaintiff.  There is no evidence as to Defendant Mravintz's training or lack thereof.  Nor is there any evidence as to Defendant Mravintz having a history of assaulting inmates.  Hence, there is no evidence to show that Defendant Stayer was aware of any inadequacies in Defendant Mravintz or in his training, yet alone evidence that Defendant Stayer was deliberately indifferent to a risk that Defendant Mravintz posed a risk of harm to the prisoners.  Plaintiff does attest that after the alleged assault by Mravintz, Defendant Stayer told Mravintz that he had to "write something up" "to

cover his ass." Doc. 70, at 4 ¶ 28.  However, such actions or
inactions that occur after the alleged assaults had already been
completed cannot be said to have been the "cause" of any
injuries.  Without such causation there can be no liability.
See, e.g., Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)
(to "survive a summary judgment on an Eighth Amendment claim
asserted under 42 U.S.C. § 1983, a plaintiff is required to
produce sufficient evidence of (1) a substantial risk of serious
harm; (2) the defendants' deliberate indifference to that risk;
and (3) causation."); Ricker v. Weston,  27 Fed.Appx. 113, 119
(3d Cir. 2002)("This decision not to discipline the officers does
not amount to active involvement in appellees' injuries given
that all of the injuries occurred before the decision.").
Accordingly, summary judgment should be entered in favor of
Defendant Stayer, regardless of the theory of liability.

### 3.  October 22, 2003 Incident

The second incident that Plaintiff complains of occurred on
October 22, 2003. Plaintiff claims that Defendants Bertolino,
Brothers, Fisher, Labosky, and Pritts escorted Plaintiff back
from a disciplinary hearing.  Upon arriving at the cell,
Defendant Brothers ordered Plaintiff to face the window.  Doc. 70
at 5, ¶ 45.  Plaintiff confesses that he attempted to turn
around, id., at ¶ 46, despite the tape showing that he was
ordered to face the window, and then, after being ordered several
times to face the window, apparently without compliance,
Plaintiff was seized from behind and physically put down on the

floor while Plaintiff was handcuffed.  Id., at ¶ 46.  Plaintiff then alleges that after being subdued by Defendants Brothers, Fisher, and Labosky, Defendant Pritts came into the cell and allegedly kicked the Plaintiff in the face and stated "This is for grievancing Mravintz."  Doc. 70 at 5, ¶ 47.  This is allegedly a reference to the fact that Plaintiff filed a grievance against Defendant Mravintz concerning the October 2, 2003 incident.  After Plaintiff was subdued, Defendant Bertolino is alleged to have come to Plaintiff's cell door and Plaintiff stated to Defendant Bertolino that Defendant Pritts kicked him in the head.  Plaintiff alleges that Defendant Bertolino did nothing after Plaintiff informed him of the alleged kicking by Defendant Pritts.

Plaintiff alleges that the foregoing actions of the Defendants violated his Eighth Amendment rights to be free of excessive force.  Specifically, he alleges that "Defendant[s] Brothers, Fisher, [and] Labosky['s] refusal to check defendant Pritts, [i.e., prevent him from kicking Plaintiff] signals they [sic] acquiesce [sic] to defendant Pritts maliciously and sadistically use of force on the Plaintiff."  Doc. 70 at 6, ¶ 51. In addition, he alleges a First Amendment retaliation claim against Defendant Pritts.  Doc. 103-1 at 6.[8]

---

[8]  Although not clear, it could be that Plaintiff is making an excessive force claim against Defendant Brothers for his taking Plaintiff down to the floor after Plaintiff admittedly tried to turn around after being ordered to face the window.  See Doc. 70 at 5 ¶ 46. Plaintiff's own version of the events attested to in his verified complaint, as well as the video tape of the incident, offer no support

Plaintiff is alleging against Defendants Brothers, Fisher and Labosky a failure to intervene to prevent the harm. Because there is no evidence that the alleged kick by Defendant Pritts was anything other than a split second occurrence, Plaintiff has adduced no evidence that these Defendants had a reasonable and realistic opportunity to intervene to prevent this alleged assault. Hence, they are entitled to summary judgment on this claim.

The only allegation concerning Lt. Bertolino is that after the alleged kick by Pritts and after Plaintiff was in his cell and his cell door locked, Defendant Bertolino "came on the unit and came to Plaintiff's door, while his slot was being locked" and "Plaintiff clearly stated to defendant Bertolino that defendant Pritts kicked him in the head. But defendant Bertolino shown [sic] deliberate indifference after the Plaintiff alerted him of being just physically assaulted. Instead he walked away, having never reported the incident." Doc. 70 at 5, ¶ ¶ 49-50.

To the extent that Plaintiff is making a claim against Bertolino that Bertolino as a supervisor failed to protect Plaintiff (as distinct from a claim that he failed to intervene) such a claim against Bertolino is the same claim Plaintiff made against Stayer above. The reasoning above applied to grant

---

for the fact that Defendant Brothers' use of force to prevent Plaintiff from turning around was excessive. No reasonable juror viewing this evidence could find for Plaintiff. Hence, to the extent that Plaintiff is making an independent claim of excessive force against Defendant Brothers, summary judgment should be entered in favor of Defendant Brothers on this claim.

Defendant Stayer summary judgment is equally applicable to Defendant Bertolino.  There is no evidence of record concerning Defendant Pritts history of prior assaults or of his training and even if there were, there is no evidence of Defendant Bertolino having any knowledge of either Pritts' history or training. Hence, Bertolino cannot be held liable on a supervisory theory. Nor, given that he came upon the scene after the alleged kicking had occurred, can he be held liable for doing nothing after being told by Plaintiff that Pritts kicked him because the Eighth Amendment violation had already occurred and hence, Defendant Bertolino cannot be said to have caused the alleged kick/assault. See, e.g., Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.").

Hence, summary judgment should be entered in favor of Defendants Brothers, Fisher, Labosky and Bertolino.

### 4.  Defendant Pritts

That leaves only two claims remaining to be addressed, the Eighth Amendment claim that Defendant Pritts kicked Plaintiff once in the face when Plaintiff had already been subdued, and a second claim that Defendant Pritts violated his First Amendment right to be free of retaliation.

In support of their summary judgment motion, the Defendants offered the video tape and arguments in their brief in support.

The court will address the arguments first.  Defendants argue that Plaintiff created a disturbance by his refusal to obey Defendant Brothers' order to turn toward the window and attempted to turn around toward Defendant Brothers.  Doc. 95 at 6.  Although not stated, it appears that the Defendants argue that given the disturbance created, Defendants were justified in their use of force.  The court agrees that having viewed the video tape and in light of Plaintiff's own admission that he attempted to turn around notwithstanding Defendant Brothers' order to face the window, taking Plaintiff down to the floor of the cell cannot be found to constitute excessive force.  However, once having been subdued on the floor, there is no evidence that Defendant Pritts' alleged kick to the face was anything other than gratuitous and wanton.  Hence, the Defendants have not shown entitlement to summary judgement on this particular claim against Pritts.

Next, Defendants argue that because the injury to Plaintiff's left upper eye, which required three sutures to close, was de minimis, Plaintiff's claim fails to constitute an Eighth Amendment violation.  As noted above, de minimis injury does not necessarily mean no unconstitutional force was used. See, e.g., Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) ("*de minimis* injuries do not necessarily establish *de minimis* force.").  Given the current state of the evidentiary record, viewed in a light most favorable to Plaintiff, there is a disputed issue of material fact whether Pritts kicked Plaintiff and whether the alleged kick constituted excessive force.  Hence,

22

Defendants' arguments are not persuasive for the granting of summary judgment.[9]

As for the tape, as noted in the immediately preceding footnote, it is impossible to tell from the tape whether Pritts kicked Plaintiff.  Furthermore, given the sound quality of the tape, it  makes it impossible to tell whether Pritts said what he is alleged to have said.  Thus, the court cannot grant summary judgment on the retaliation claim against Pritts. The facts attested to by Plaintiff, i.e., Pritts kicked him and said simultaneously "This is for grievancing Mravintz" are sufficient, if believed, to permit a jury to find that Pritts retaliated against Plaintiff and the tape does not unambiguously demonstrate to the contrary.

Defendants do raise a qualified immunity defense as well. However, given the court's recommended disposition, the court need only address the qualified immunity defense as to Defendants Mravintz and Pritts. As noted by the Defendants, a "government

_____

[9]  The court would be remiss if it did not comment on an exhibit attached to the Defendants' summary judgment motion.  Defendants attached a report dated November 26, 2003 from Security Captain Thomas Papuga.  In that report he concludes after viewing the video tape and after conducting interviews that "At NO time did Officer Pritts kick" Plaintiff. Doc. 94-3 at 39.  The report further concludes that the "way inmate Brown and the officers were positioned on the cell floor against the wall and against the bed, there was no room for Officer Pritts to kick forward because he would have run into the bed frame or wall on any type of backward motion."  Doc. 94-3 at 39. This court's review of the tape does not show the position of the bed or wall in relation to the Plaintiff and, in fact, Defendant Pritts is obscured from the camera, at least for a brief time, by the wall and the other Defendants once he enters the cell.  Hence, the court is not capable of determining from the tape, unlike Papuga's report, that it was physically impossible for Defendant Pritts to have kicked Plaintiff.

official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Berg v. County of Allegheny, 219 F.3d 261 (3d Cir. 2000). In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Given the facts of record attested to by Plaintiff, it is clear that if believed, a reasonable person would have known under those facts that banging Plaintiff against the wall twice, in the case of Defendant Mravintz, and kicking Plaintiff in the face when already subdued on the floor and saying what Pritts allegedly said, in the case of Pritts, violated Plaintiff's right to be free from excessive force in both cases and violated his right to be free from retaliation in Pritts' case. Hence, qualified immunity does not merit the grant of summary judgment.


**CONCLUSION**

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the

objections to respond thereto.  Failure to timely file objections
may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
United States Magistrate Judge

Dated: 14 November, 2006

cc:  The Honorable Kim R. Gibson
     United States District Judge

     Edward Brown
     DU-6605
     SCI Greene
     175 Progress Drive
     Waynesburg, PA 15370

     Craig E. Maravich, Esquire
     Office of the Attorney General
     564 Forbes Avenue
     6th Floor, Manor Complex
     Pittsburgh, PA 15219